# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2955-22

F.C.,

     Plaintiff-Appellant,

v.

ROMAN CATHOLIC
ARCHDIOCESE OF
PHILADELPHIA,
ST. HELENA PARISH,
ST. HELENA CHURCH,
ST. JOSEPH PARISH, and
ST. JOSEPH CHURCH,

     Defendants-Respondents,

and

FATHER THOMAS SHEA,

     Defendant.

_____

Argued December 18, 2023 – Decided January 24, 2024

Before Judges Gilson and Berdote Byrne.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0474-19.

John W. Baldante argued the cause for appellant (Levy, Baldante, Finney, & Rubenstein, PC, attorneys; John W. Baldante and Mark R. Cohen, on the briefs).

Nicholas M. Centrella argued the cause for respondents (Clark Hill PLC, attorneys; Nicholas M. Centrella, on the brief).

PER CURIAM

Plaintiff alleges that in the 1970s, when he was between the approximate ages of eleven and fifteen, he was repeatedly sexually abused by Father Thomas Shea, who was then a Roman Catholic priest of the Archdiocese of Philadelphia (the Archdiocese).[1]  In 2019, plaintiff filed suit in New Jersey alleging that the Archdiocese, St. Helena Parish, St. Helena Church, St. Joseph Parish, and St. Joseph Church (collectively, the Archdiocese defendants) were civilly liable for the abuse by Shea.  Shea was also named as a defendant, but he is now deceased. Plaintiff appeals from an order granting the Archdiocese defendants' motion to

---

[1]  Plaintiff identifies himself by name in his complaint.  We refer to him by his initials and as plaintiff to protect privacy interests concerning allegations of child sexual abuse because, in his complaint and documents he submitted in discovery, he referred to other children who were allegedly sexually abused by Shea and other priests of the Archdiocese.  See R. 1:38-3(c)(9); see also N.J.S.A. 2A:61B-1(f).

A-2955-22

dismiss for lack of personal jurisdiction.  We affirm because jurisdictional discovery established that the Archdiocese defendants did not purposefully avail themselves of any benefits in New Jersey related to Shea's alleged abuse of plaintiff.  Therefore, New Jersey does not have personal jurisdiction over the Archdiocese defendants related to this lawsuit.

I.

We discern the facts from the record developed during jurisdictional discovery.  The Archdiocese is an unincorporated, religious, non-profit association that operates in Pennsylvania.  Its principal place of administration is in Philadelphia, and it oversees Catholic parishes in five Pennsylvania counties.  St. Helena Parish and Church and St. Joseph Parish and Church are all located in Pennsylvania and are within the geographic area controlled by the Archdiocese.  The Archdiocese does not oversee or operate any churches, parishes, or religious facilities in New Jersey.  It also does not assign priests to any parishes in New Jersey.

The Archdiocese does not currently own any real property in New Jersey. In the past, the Archdiocese did own several properties in New Jersey that were given to it, but those properties were sold before 2013.  The Archdiocese also owned and operated two properties in Ventnor, New Jersey, which it used as

3

vacation homes for priests. The Ventnor properties were acquired in 1963 and sold in 2012 and 2013.

In the 1970s, Shea was a Catholic priest serving in the Archdiocese. He served at various parishes and facilities, all located in Pennsylvania.

Plaintiff is a resident of Pennsylvania. During his childhood, he attended and served as an altar boy at St. Helena Church in Philadelphia, Pennsylvania. There, plaintiff met Shea, who served as a priest at St. Helena in the 1970s. Plaintiff asserts that Shea used his position as a priest to groom plaintiff and develop a relationship of trust with plaintiff and his family.

Plaintiff alleges that beginning in 1972 and continuing for approximately the next five years, Shea sexually abused him hundreds of times. Most of the abuse occurred in Pennsylvania. Plaintiff also contends that in 1975, Shea took him to a motel in Cape May, New Jersey. Plaintiff testified that Shea sexually assaulted him approximately six times during the weekend trip to Cape May.

In December 2019, plaintiff sued the Archdiocese defendants in New Jersey. Plaintiff contends that the Archdiocese defendants are responsible for Shea's sexual abuse of him, and he asserted causes of action for negligence, negligent supervision, negligent hiring and retention, gross negligence, intentional infliction of emotional distress, and breach of fiduciary duties.

4

Plaintiff also contends that the Archdiocese defendants knew of Shea's history of sexual abuse of children but did not restrict his activities with children.

The Archdiocese defendants moved to dismiss plaintiff's complaint for lack of personal jurisdiction. The trial court initially denied that motion and directed the parties to engage in jurisdictional discovery. Following the completion of that discovery, the Archdiocese defendants again moved to dismiss the complaint.

On April 25, 2023, after hearing arguments from counsel, the trial court issued an order granting the motion and dismissing plaintiff's claims against the Archdiocese defendants for lack of personal jurisdiction.[2] Plaintiff now appeals.

## II.

On appeal, plaintiff contends that the Archdiocese defendants are subject to specific jurisdiction in New Jersey because Shea was an agent of the Archdiocese defendants. He argues that the Archdiocese defendants facilitated

---

[2] At the same time, the same trial court also dismissed three other complaints against the Archdiocese for lack of personal jurisdiction. We have affirmed those three other dismissals in separate unpublished opinions. Jane Doe v. Archdiocese of Phila., No. A-2962-22 (App. Div. 2024); J.S. v. Roman Cath. Archdiocese of Phila., No. A-2956-22 (App. Div. 2024); John Doe 1 v. Archdiocese of Phila., No. A-3636-21 (App. Div. Dec. 27, 2023).

A-2955-22

Shea's actions in New Jersey by not restricting the conduct of Shea and other priests of the Archdiocese as it related to children.

Personal jurisdiction is a "'mixed question of law and fact' that must be resolved at the outset, 'before the matter may proceed.'" Rippon v. Smigel, 449 N.J. Super. 344, 359 (App. Div. 2017) (quoting Citibank, N.A. v. Est. of Simpson, 290 N.J. Super. 519, 532 (App. Div. 1996)). We review a trial court's findings of fact with respect to jurisdiction "to determine if those findings are supported by substantial, credible evidence in the record," but conclusions of law are reviewed de novo. Id. at 358. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Having considered plaintiff's arguments in light of the record and governing law, we reject them. The facts disclosed during jurisdictional discovery established that the Archdiocese defendants are not subject to jurisdiction in New Jersey because they did not purposefully avail themselves of activities in New Jersey sufficient to satisfy the "minimum contacts" required for personal jurisdiction. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945).

We have recently published two opinions that set forth the law on when a non-resident diocese is subject to personal jurisdiction in New Jersey for the alleged past sexual abuse of a minor by a priest. See D.T. v. Archdiocese of Phila., ___ N.J. Super. ___ (App. Div. 2023); JA/GG Doe 70 v. Diocese of Metuchen, ___ N.J. Super. ___ (App. Div. 2023). Like the plaintiffs in those cases, plaintiff here concedes that he must show specific personal jurisdiction over the Archdiocese defendants.

To determine whether a non-resident defendant may be subject to specific personal jurisdiction, courts examine the "relationship among the defendant, the forum, and the litigation." Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). "In order for a state court to exercise [specific] jurisdiction over a non[-]resident defendant, the lawsuit 'must aris[e] out of or relat[e] to the defendant's contacts with the forum.'" Jardim v. Overley, 461 N.J. Super. 367, 376 (App. Div. 2019) (third and fourth alterations in original) (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)); accord Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106, 119 (1994), cert. denied, 513 U.S. 1183 (1995); see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. ___, 141 S. Ct. 1017, 1025 (2021).

"The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." Lebel, 115 N.J. at 323 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)); see also Waste Mgmt., 138 N.J. at 126 (explaining that "the existence of minimum contacts turns on the presence or absence of intentional acts of the defendant to avail itself of some benefit of a forum state"). The contacts "must be the defendant's own choice and not 'random, isolated, or fortuitous.'" Ford, 141 S. Ct. at 1025 (quoting Keeton v. Hustler Mag., Inc., 465 U.S. 770, 774 (1984)).

Moreover, courts determine, based on the defendant's "'conduct and connection' with the forum state . . . whether the defendant should 'reasonably anticipate being haled into court [in the forum state].'" Bayway Refin. Co. v. State Utils., Inc., 333 N.J. Super. 420, 429 (App. Div. 2000) (alteration in original) (quoting World-Wide Volkswagen, 444 U.S. at 297). In making that determination, a court "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 113 (1987). So, a court weighs "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering

8

fundamental substantive social policies." Ibid. (quoting World-Wide Volkswagen, 444 U.S. at 292).

Neither the Archdiocese's former ownership of properties in New Jersey nor its supervision over Shea as one of its priests establishes specific jurisdiction over the Archdiocese defendants in New Jersey related to Shea's alleged sexual abuse of plaintiff in New Jersey. There is no evidence that the Archdiocese's former ownership of real properties in New Jersey had any relation to plaintiff's allegations of abuse by Shea. Plaintiff testified that he was abused by Shea in 1975 at a motel in Cape May. The Archdiocese's former ownership of other properties in New Jersey was not related to Shea's rental of a motel room. Specific jurisdiction requires "a connection between the forum and the specific claims at issue." Bristol-Myers Squibb Co. v. Superior Ct., 582 U.S. 255, 265 (2017).

Moreover, there is no evidence that the Archdiocese defendants knew of, approved, or sanctioned Shea taking plaintiff to the motel. While plaintiff testified that he thought the trip was in furtherance of his religious obligations, there is no evidence that the Archdiocese defendants sponsored, or even knew of, the trip. Accordingly, there is no evidence demonstrating that the

9

Archdiocese defendants purposefully availed themselves of any benefit or activity in New Jersey in connection with Shea's alleged abuse of plaintiff.

For the reasons we detailed in D.T., we reject plaintiff's argument that Shea was acting as an agent of the Archdiocese defendants when Shea sexually abused plaintiff. ___ N.J. Super. at ___ (slip op. at 14-19). In short, there is no evidence that Shea was acting within the scope of his responsibilities as a priest when he sexually assaulted plaintiff. See Bristol-Myers Squibb Co., 582 U.S. at 265; Shaffer, 433 U.S. at 204; Lebel, 115 N.J. at 323.

We also reject plaintiff's argument that the Archdiocese defendants' failure to restrict Shea's activities confers personal jurisdiction over the Archdiocese defendants in New Jersey. For purposes of determining personal jurisdiction, which in this matter was raised on a motion to dismiss, we accept plaintiff's allegation that the Archdiocese defendants knew of Shea's deviant sexual behaviors with children at the time the alleged abuse of plaintiff occurred. We also accept plaintiff's contention that the Archdiocese defendants failed to remove Shea from the ministry despite their alleged knowledge of the risk he posed to children. While that conduct, if proven, would be inappropriate and highly irresponsible, it does not establish specific personal jurisdiction over the Archdiocese defendants in New Jersey. All the alleged conduct regarding the

retention of Shea as a priest took place in Pennsylvania. Therefore, that conduct does not constitute intentional acts of the Archdiocese defendants to avail themselves of some benefit in or from New Jersey. See Ford, 141 S. Ct. at 1025; Waste Mgmt., 138 N.J. at 126.

Finally, we also reject plaintiff's argument that because the Archdiocese knew that many of its priests were sexually abusing children, the Archdiocese's failure to restrict Shea's activities conferred personal jurisdiction in New Jersey. All the priests in the Archdiocese served in Pennsylvania, and the Archdiocese oversaw the activities of those priests in Pennsylvania from its administrative headquarters in Philadelphia. While it was foreseeable that priests would travel outside of Pennsylvania, there is no evidence that Shea took plaintiff to New Jersey on trips sanctioned or sponsored by the Archdiocese. More importantly, there is no evidence that the Archdiocese had intentionally availed itself of any benefit in or from New Jersey in connection with Shea taking plaintiff to a motel in New Jersey. In short, even if plaintiff proved all his allegations against the Archdiocese, those proofs would not establish personal jurisdiction over the Archdiocese in New Jersey in connection with plaintiff's lawsuit.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2955-22